O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN MITCHELL,<br><br>          Plaintiff,<br><br>     vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. CV 07-4044-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

///

///

///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 3, 4.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

## I.
## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ properly considered the side effects of Plaintiff's medications;

2. Whether the ALJ misstated and/or mischaracterized the evidence; and

3. Whether the ALJ should have obtained testimony from a vocational expert ("VE") regarding Plaintiff's non-exertional impairments.

(JS at 2.)

## IV.
## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# V.

# **DISCUSSION**

### A. **The ALJ Did Not Err in Considering Plaintiff's Medications and Their Side Effects.**

Plaintiff contends that, in violation of Social Security Ruling 96-7p, the ALJ failed to consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." (JS at 2-4, 6.)  Specifically, Plaintiff claims that if the ALJ chose to disregard Plaintiff's testimony as to the side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with Plaintiff's medications.  (JS at 4.)

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)).  Such factors "may include side effects of medications as well as subjective evidence of pain." Erickson, 9 F.3d at 818.  When the ALJ disregards the claimant's testimony as to subjective limitations of side effects, he or she must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medications.  See Varney, 846 F.2d at 585; see also Muhammed v. Apfel, No. C98-02592-CRB, 1999 WL 260974 (N.D. Cal. 1999).

Plaintiff contends that there are multiple references in the record that document the "significant side effects" from her medications.  (JS at 3.)  In her Disability Report and Pain Questionnaire,[3] Plaintiff reported that she was taking the following medications: Cyclobenzaprine, Meclizin, Prochlorperazine, and

---

[3] The Pain Questionnaire is dated April 26, 2005.  (AR 61.)

3

Metoclopramide. (AR at 48.) Plaintiff complained that Cyclobenzaprine caused spasms, Meclizine caused dizziness, and Prochlorperazine caused vomiting and nausea. (Id.) In her Pain Questionnaire, Plaintiff indicated that during a period of nine months, she took the medications "sometimes or not at all." (Id. at 59.) Additionally, Plaintiff states, "Sometime the medicines make's [sic] the pain worse. It cause's [sic] me to vomit more or be even more dizzier than ever. . . . The medicine make's [sic] very sleepy or drows[y]. . . ." (Id. at 59-60.)

The record, however, suggests that Plaintiff was not taking or prescribed any of the above medications for a period of time sufficient to affect her application for benefits. Plaintiff filed her application for benefits on March 31, 2005 ("protective filing date"). (Id. at 10, 23.) Prior to this protective filing date, Plaintiff took Meclizine for a brief period of time and then discontinued taking the medication because it was not relieving her symptoms. (Id. at 76-79.) There is no indication in the record that Plaintiff was prescribed Cyclobenzaprine, Prochlorperazine, or Metoclopramide.[4] (Id. at 76-79, 83, 89, 94, 130, 156, 159, 161, 189, 194, 202-03, 214-16, 234.) Additionally, it does not appear that Plaintiff mentioned any medication induced side-effects, with the exception of Meclizine, to her treating physicians. (Id. at 74-246.) Nowhere did Plaintiff, nor her treating physicians, describe how any of the limited side-effects caused by Meclizine interfered with her work ability. (Id.) Moreover, approximately a month prior to her hearing on July 24, 2006, Plaintiff reported to the Office of Hearings and Appeals that she was taking the following medications: (a) Lisiopril for high blood pressure; (b) Vytorin for high cholesterol; (c) Fluoxetine for

---

[4] Defendant alleges that Plaintiff was prescribed Cyclobenzaprine in February 2004 for muscle tension headaches. (JS at 5.) There is no indication in the record that Plaintiff was prescribed Cyclobenzaprine at any relevant time. (See generally AR at 74-246; id. at 83.)

depression and anxiety; (d) Novolin and Novolog for high sugar; and (e) Tylenol and Bayer Aspirin for migraines and high blood pressure. (Id. at 16, 73.) Notably, these medications are not the ones that Plaintiff contends caused her limiting side-effects. (JS at 2-4, 6.) Furthermore, Plaintiff failed to provide testimony regarding the side-effects of her medications (AR at 248-68), with the exception of Meclizine, which she discontinued using. (Id. at 262-63.)

Plaintiff does not dispute that medication side effects must be medically documented in order to be considered. See Miller v. Heckler, 770 F.2d 845, 849 (1985). Here, the only documentation of medication side effects in the record found by the Court are the ones caused by Meclizine, which Plaintiff briefly took in 2004. (AR at 76-79.) On this record, the Court is unable to find that the alleged side effects of Plaintiff's medications were medically documented. Thus, there was no reason for the ALJ to consider these potential side effects, and there was no legal error in his failure to do so.

To the extent that Plaintiff is contending that the ALJ failed to address the side effects of Meclizine, this also does not constitute legal error. As stated above, Plaintiff offered no medical evidence that she took Meclizine for any substantial period of time or certainly not for a period of at least twelve months. See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (a disability claimant must show that a medically determinable physical or mental impairment prevents the claimant from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months). Moreover, the ALJ did consider Plaintiff's subjective complaints, including the effect of Meclizine, and rejected them, reasoning:

> [A]s indicated above, the medical record fails to document the frequency and duration of claimant's symptoms. To the contrary, medical reports only show sporadic treatment for complaints of

|   |   |
|---|---|
| 1 | dizziness/vertigo and headaches.  Finally, the claimant's symptoms |
| 2 | have been reported to be relieved with Meclozine [sic].  For these |
| 3 | reasons, the Administrative Law Judge concludes that the claimant's |
| 4 | allegations are only partially credible.[5] |

(AR at 12.)  Based on the foregoing, Plaintiff's argument that this matter should be remanded in order to properly consider the side effects of her medications is without merit.

Accordingly, the Court finds that the ALJ did not err by failing to consider the side effects of Plaintiff's medications, as required by Social Security Ruling 96-7p.

**B.     The ALJ Did Not Err by Misstating or Mischaracterizing the Evidence.**

Plaintiff contends that the ALJ mischaracterized the evidence regarding Plaintiff's lack of "persistent abnormalities of gait and station."  (JS at 6.) Plaintiff argues that a consultative examination by Dr. Mark Borigini revealed that Plaintiff had difficulty with tandem walking and turning corners.  (Id.) Plaintiff further argues that Dr. Borigini's report was subsequent to a diagnostic MRI revealing a cyst in her brain, and thus, the report "clearly indicate[s] a progression of her condition to worse."  (Id. at 6-7, 9.)

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881

---

[5]  Plaintiff is not contesting that the ALJ improperly determined her credibility.  (See generally JS.)  Thus, the Court will not address this issue.

F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Here, the ALJ stated, "The medical records do not document any persistent abnormalities of gait and station." (AR at 11.) The medical record supports the

ALJ's finding. First, Plaintiff's medical records from November 2003 to June 2004 from Kaiser Permanente do not suggest that Plaintiff had any difficulties of gait and station. (Id. at 74-129.) Second, the ALJ notes that Plaintiff's treating physicians never indicated that her symptoms had a "significant impact on her ability to perform the exertional and non-exertional requirement of light and medium work." (Id. at 11.) The ALJ relies upon the findings of a treating physician, Dr. Lawrence S. Liu, who conducted a neurological examination of Plaintiff on July 23, 2004. (Id. at 11, 150-57.) Dr. Liu concluded that Plaintiff has "normal toe-heel and tandem gait. . . ." (Id. at 11, 156.) The ALJ also relies upon the findings of another treating physician, Dr. Yohsuke Fukami, who conducted a neurological examination of Plaintiff on April 10, 2006. (Id. at 11, 212-13.) Dr. Fukami observed:

> Her gait is very steady. She is able to walk in a tandem gait. Walking in the hallways, she is able to walk very steadily even though as she made a turn she said she felt lightheaded, but external observation showed no abnormalities at this time.

(Id. at 11, 212.) Thus, Plaintiff's treating physicians concluded that her gait was normal.

The ALJ also considered the opinions of two consultative examiners, who both noted difficulty in Plaintiff's gait and coordination. (Id. at 11, 130-49.) The ALJ provided:

> Because Mark Borigini, M.D. observed that the claimant had some difficulty with coordination, which was attributed to her brain mass, he indicated that she should avoid work hazards and more than occasional bending and crouching. Dr. Borigini also opined that the claimant should not do more than medium lifting. A State Agency doctor also indicated that the claimant could perform medium exertional activities

> but would need to avoid work hazards, climbing ladders/ropes/scaffolds, and performing more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of stairs/ramps.

(Id. at 11-12 (citations omitted).) Dr. B. Harris, who performed a consultative examination of Plaintiff on August 16, 2005, noted that Plaintiff has "great difficulty [with] tandem [walking]. When she comes to a wall and has to turn, she loses her balance." (Id. at 136-49.) Additionally, on July 25, 2005, Dr. Borigini performed a consultative examination, and he observed Plaintiff's gait as follows: "She has difficulty with tandem walking. Likewise, she would walk back and forth across the room and when she came to the wall and had to turn around, she would lose her balance." (Id. at 132.) In terms of specifically limiting Plaintiff, Dr. Borigini opined that Plaintiff do no more than medium lifting. (Id.) Both Drs. Harris and Borigini indicated that Plaintiff has difficulty with walking, and the ALJ considered this limitation that Plaintiff has "difficulty with coordination" in determining Plaintiff's residual functional capacity ("RFC").[6] (Id. at 11-12.) Based on the foregoing, the ALJ was not required to provide specific and legitimate reasons, based upon substantial evidence in the record, to reject the opinions of Drs. Harris and Borigini precisely because he was not rejecting those opinions. Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d at 647. In fact, the ALJ even stated that he "concurs with the

---

[6] The ALJ concluded that Plaintiff could perform light exertional work. (AR 11-13.) The ALJ provided:
> The claimant's capacity to perform work-related activities only is limited by her inability to lift more than fifty pounds on an occasional basis and twenty-five pounds on a frequent basis, by her inability to climb ladders/ropes/scaffold, by her inability to perform more than occasional climbing of stairs/ramps, balancing, stooping, kneeling, crouching, and crawling, and by her need to avoid work hazards.

(Id. at 13 (citation omitted).)

State Agency opinion because it is consistent with the overall record." (AR at 12.) Thus, the Court finds that the ALJ did not mischaracterize the evidence regarding Plaintiff's gait and station.

### C. The ALJ Did Not Err by Failing to Obtain VE Testimony.

Plaintiff's final argument is that the ALJ improperly applied the Medical-Vocational Guidelines ("Guidelines" or "grids") to determine that Plaintiff could perform a significant number of jobs despite her limitations, and she was, therefore, not disabled. (JS at 9-10, 12.) Plaintiff further argues that her significant non-exertional limitations, such as the medication side-effects, diabetes and severe neurological impairments, required the ALJ to obtain VE testimony. (Id.) As a threshold matter, the Court notes that the ALJ rejected Plaintiff's subjective complaints of medication induced side-effects. (See discussion infra Part III.A).

It is well established that the ALJ may rely upon either the testimony of a vocational expert or by reference to the Guidelines to determine whether a plaintiff can perform work in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (citing Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577-78 (Pregerson, J., concurring) (9th Cir. 1988)). The Guidelines consist of tables, commonly referred to as "grids," that provide a "short-hand method for determining the availability and numbers of suitable jobs for a claimant." 20 C.F.R. § 404, subpt. P, app. 2; Tackett, 180 F.3d at 1101. The ALJ may rely solely on the Guidelines when the relevant grid "completely and accurately represent[s] a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work or medium work." Tackett, 180 F.3d at 1101. Where a nonexertional limitation is sufficiently severe so as to significantly limit the range of work permitted by the clamant's exertional

limitation, a vocational expert's testimony is necessary. <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1076 (9th Cir. 2007) (quoting <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 948, 960 (9th Cir. 2002); <u>Bruton v. Massanari</u>, 268 F.3d 824, 827 (9th Cir. 2001).

Social Security Ruling 83-15[7] defines nonexertional impairments as follows:

> Any job requirement which is not exertional is considered nonexertional. A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. Nonexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do.

(Soc. Sec. Ruling 83-15.) Consequently, nonexertional limitations limit the ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); 20 C.F.R. § 404.1569a(c). Nonexertional limitations include difficulty in: functioning because of nervousness, anxiety or depression; maintaining attention or concentration; understanding instructions; seeing or hearing; tolerating physical features of a work setting; and manipulative or postural functions (e.g., reaching, handling, stooping, or crouching). 20 C.F.R. § 404.1569a (c)(1). The severity of the impairment requiring the use of a vocational expert at step five is greater than the severity of the impairment required to find an impairment "severe" at step two of the ALJ's analysis. <u>Hoopai</u>, 499 F.3d at 1077.

---

[7] Social Security Rulings are binding on ALJs. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

Here, as discussed above, the ALJ found that Plaintiff could perform light exertional work, limited by her inability to lift more than fifty pounds on an occasional basis and twenty-five pounds on a frequent basis. (AR at 11-13.) The ALJ also noted that Plaintiff has non-exertional limitations, such as her "inability to climb ladders/ropes/scaffold, by her inability to perform more than occasional climbing of stairs/ramps, balancing, stooping, kneeling, crouching, and crawling, and by her need to avoid work hazards." (Id. at 13 (citation omitted).)

The ALJ then relied upon SSR 85-15 to justify his reliance upon the Guidelines. (Id. at 12); see also SSR-85-15.[8] The ALJ concluded, "Social Security Ruling 85-15 indicates that such limitations leave the light exertional job base fully intact. Therefore, the medical-vocational rules are fully applicable." (AR at 12.) For plaintiffs who have non-exertional limitations, such as climbing and balancing, as Plaintiff does, SSR 85-15 provides:

> Limitations in climbing and balancing can have varying effects on the occupational base, depending on the degree of limitation and the type of job. . . . Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . .

Similarly, for plaintiffs who have non-exertional limitations, such as stooping, kneeling, crouching and crawling, as Plaintiff does, SSR 85-15 provides:

> If a person can stoop and [crouch] occasionally . . . [the] light occupational base is virtually intact. . . . [C]rawling on hands and feet

---

[8] SSR 85-15 provides, "If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience."

is a relatively rare activity. . . , and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling. . . .

Here, the ALJ properly determined that Plaintiff's non-exertional limitations, i.e., her inability to perform more than occasional climbing, balancing, stooping, kneeling, crouching and crawling, did not significantly limit the range of light exertional work. Thus, the ALJ's reliance on the Guidelines was proper. See Tackett, 180 F.3d at 1101; see also SSR 85-15.

Based on the foregoing, the ALJ properly utilized the Guidelines to determine that Plaintiff was not disabled. Thus, there was no error.

## IV.

## **ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: March 3, 2009

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge